UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES DEFERIO,

                    Plaintiff,              5:11-CV-0563
                                                          (GTS/RFT)
v.

BD. OF TR. OF THE STATE UNIV. OF NEW YORK;
NANCY L. ZIMPHER, in her official capacity as
Chancellor of the State Univ. of New York; GEORGE
M. PHILIP, in his official capacity as President of State
Univ. of New York at Albany; and STACY STERN,
individually and in her official capacity as Assistant to
the Vice President at State Univ. of New York at Albany,

                    Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

ALLIANCE DEFENSE FUND                 JONATHAN SCRUGGS, ESQ.
   Counsel for Plaintiff                           NATHAN KELLUM, ESQ.
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117

LAW OFFICE OF THOMAS MARCELLE      THOMAS MARCELLE, ESQ.
   Counsel for Plaintiff
2 E-Comm Square, 3rd Floor
Albany, NY 12207

LAW OFFICE OF PHILIP J. VECCHIO, P.C.     PHILIP J. VECCHIO, ESQ.
   Counsel for Plaintiff
24 Huntswood Lane
East Greenbush, NY 12061

HON. ERIC T. SCHNEIDERMAN             ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224

HON. GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court in this civil rights action, filed by James Deferio ("Plaintiff") against the Board of Trustees of the State University of New York ("SUNY"), Nancy L. Zimpher, George M. Philip, and Stacy Stern (together "Defendants"), is Plaintiff's motion for a preliminary injunction. (Dkt. No. 4.) For the reasons set forth below, Plaintiff's motion is denied.

**I.    RELEVANT BACKGROUND**

   **A.    Plaintiff's Complaint**

On May 19, 2011, Plaintiff filed his Complaint. (Dkt. No. 1.) Generally, Plaintiff's Complaint asserts a free-speech claim under the First Amendment and a due process claim under the Fourteenth Amendment, arising from his unsuccessful attempt to freely express his religious beliefs on the State University of New York at Albany ("SUNY-Albany") campus on October 13, 2008, and April 21, 2009, for which he seeks declaratory judgment, preliminary injunction, permanent injunction, nominal damages, and attorneys' fees and costs. (*See generally* Dkt. No. 1.)

Because the parties have (in their motion papers and during oral argument on August 10, 2011) demonstrated an adequate understanding of Plaintiff's claims and the factual allegations supporting those claims, the Court will not recite in detail all of those claims and factual allegations in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those claims and factual allegations only where necessary in Part III of this Decision and Order.

B.   **Plaintiff's Motion for a Preliminary Injunction**

On May 20, 2011, Plaintiff filed a motion for a preliminary injunction, supported by affidavits and other exhibits. (Dkt. No. 4.) Plaintiff's motion seeks the following injunctive relief: "a preliminary injunction enjoining Defendants . . . and their agents, servants, employees, attorneys, and all persons and entities in active concert or participation with them, directly or indirectly, from applying the SUNY and SUNY-Albany Use and Fee Policies, on their face and as applied, so as to prevent Deferio or other speakers from engaging in their desired and constitutionally protected speech activities." (Dkt. No. 4, Attach. 1, at 1.)[1]

On July 25, 2011, Defendants filed a response to Plaintiff's motion for a preliminary injunction, supported by affidavits and other exhibits. (Dkt. No. 12.) On August 3, 2011, Plaintiff filed a reply to Defendants' response. (Dkt. No. 16.) On August 8, 2011, Defendants (with prior leave of the Court) supplemented their papers in opposition to Plaintiff's motion, in order to correct a misapprehension of the standard governing motions for preliminary injunction. (Dkt. No. 18; *see also* Text Order filed Aug. 3, 2011.)

On August 9, 2011, the day before the hearing on Plaintiff's motion for preliminary injunction was scheduled to occur, Defendants filed a letter stating as follows, in pertinent part: "In advance of tomorrow's hearing in the above-referenced matter, please be advised that I have

---

[1]   It is worth noting that, while Plaintiff's motion arguably requests an injunction that prevents the application of the referenced policies on *any SUNY campus*, Plaintiff's Complaint request an injunction that prevents the application of the referenced policies only on *the SUNY-Albany campus*. (Dkt. No. 1, at 15 [requesting "a preliminary . . . injunction enjoining defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying the SUNY and SUNY-Albany Use and Fee policies so as to restrict constitutionally-protected speech of non-university speakers, including Deferio, on open public areas on the SUNY-Albany Uptown campus . . . "].)

just been informed that SUNY Albany is no longer enforcing its policy that is the subject of this proceeding." (Dkt. No. 20.)

On August 10, 2011, the Court held a hearing on Plaintiff's motion for preliminary injunction. No witnesses testified during the hearing. However, among other things, Defendants' counsel represented that, because a new (non-offensive) policy was "going into effect today," "anybody that's applying to speak at SUNY Albany is no longer going to be asked to follow the policy that's being challenged here." (Hrg. Tr. at 1-2.) Defendants' counsel further represented that, while the new policy was only "temporary" (having been approved by only the president of SUNY-Albany), it was going to be voted on by SUNY-Albany's "University Council" in October 2011 (at their next scheduled meeting), when it was expected to be approved by them, and permanently put into place at SUNY-Albany. (*Id*. at 6-7.) In response, Plaintiff's counsel argued, *inter alia*, that Plaintiff was not challenging only the policy that pertains to SUNY-Albany but also the policy that pertains to all SUNY campuses. (*Id*. at 9, 11.) In reply, Defendants' counsel indicated that, under the general SUNY policy, individual campuses essentially possessed the discretion to implement the policies they wanted (leaving open the possibility that other SUNY campuses might implement a policy like SUNY-Albany's new policy). (*Id*. at 12-13.) Given the new legal and factual issues raised by the change of events, at the conclusion of the Hearing, the Court afforded the parties an opportunity to submit further briefing on the effect that SUNY-Albany's change in its policy had on Plaintiff's motion. (*Id*. at 13-14.)

As a result, on August 24, 2011, Defendants filed a post-hearing brief in opposition to Plaintiff's motion. (Dkt. No. 24.) In support of that brief was a declaration from a member of

the SUNY General Counsel's Office, which corroborated the representations made by Defendants' counsel at the Hearing. (*Id*.) On August 31, 2011, Plaintiff filed a reply to Defendants' post-hearing brief. (Dkt. No. 26.)

Because the Court had not heard from the parties during the weeks that followed the end of October 2011 (when the University Council's meeting was scheduled to occur), the Court issued a Text Order on December 16, 2011, which directed Defendants to provide the Court with the following information: (1) a copy of the SUNY-Albany "Use of Facilities by Third Parties for Free Speech" Policy referenced in Paragraph 11 of Dkt. No. 24; and (2) an affidavit from a member of the SUNY General Counsel's Office informing the Court of (a) whether, and if so when, the University Council approved the aforementioned SUNY-Albany Policy, and (b) notwithstanding the approval and/or adoption of the aforementioned SUNY-Albany Policy, whether SUNY's 1991 state-wide "Use of Facilities by Non-Commercial Organizations" Policy will continue to be imposed on persons such as Plaintiff who want to use other SUNY campuses' designated public fora for free-speech purposes. (First Text Order filed Dec. 16, 2011.)

In addition, that same day, the Court issued a Text Order directing Plaintiff to provide the Court with the following information: an affidavit informing the Court of whether, and if so when, Plaintiff unsuccessfully tried to speak at SUNY-Albany, or any other SUNY campus, after August 9, 2011, the date on which the SUNY-Albany Administration adopted the "Use of Facilities by Third Parties for Free Speech" Policy, according the SUNY General Counsel's Office. (Second Text Order filed Dec. 16, 2011.)

On December 22, 2011, Defendants provided the Court with the information it requested. (Dkt. No. 28.) In particular, Defendants adduced a declaration from a member of the SUNY

General Counsel's Office stating, *inter alia*, that (1) on December 9, 2011, SUNY-Albany's University Council approved the new policy in question, and (2) on December 22, 2011, the SUNY Vice Chancellor and General Counsel issued a memorandum to the Presidents of the 30 state-operated SUNY campuses, advising them to not use the challenged policy, and recommending that they instead use a policy like SUNY-Albany's new policy. (Dkt. No. 28, at 2.)[2]

On January 6 and 9, 2012, Plaintiff provided the Court with the information it requested. (Dkt. Nos. 30-3.) In particular, Plaintiff adduced his declaration stating, *inter alia*, that he has not attempted to speak at any SUNY campus since August 9, 2011, because (1) due to the legal arguments and representations made by Defendants at the Hearing, he believed that the new policy was "neither official nor effective," and (2) due to the way that SUNY has treated him in the past, its "latest promise cannot be believed." (Dkt. No. 30.) In addition, Plaintiff adduced the declaration of a third-party (Dominic Bonasio), who states, *inter alia*, that, on December 14, 2011, he inquired about the procedure for his obtaining permission to "hand out Gospel tracts to students" on the SUNY-New Paltz campus on January 25, 2012, but was notified on December 15, 2011, that SUNY-New Paltz has a policy similar to the policy challenged in Plaintiff's Complaint. (Dkt. Nos. 31-33.)

---

[2] The declaration from the member of the SUNY General Counsel's Office explains that the SUNY system is comprised of 64 campuses: 30 state-operated campuses for which the General Counsel's Office provides legal services; 30 community colleges that are typically represented by the county in which the campus is located; and four "statutory colleges," represented by the Cornell University General Counsel's Office. (Dkt. No. 28, at 1.)

II.  **LEGAL STANDARD GOVERNING MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to the legal standard governing motions for preliminary injunctions, a party seeking such relief must establish two things. First, the party must establish a likelihood of irreparable harm if the requested relief is denied. Second, the party must establish either (a) a likelihood of success on the merits of its case, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2002).

III.  **ANALYSIS**

A.  **Whether Plaintiff Has Established a Likelihood of Irreparable Harm if the Requested Relief Is Denied**

The Court has carefully weighed the evidence adduced by Plaintiff and Defendants.[3] Upon doing so, the following facts have become clear to the Court: (1) the new SUNY-Albany policy is much more permissive and reasonable than is the challenged SUNY-Albany policy;[4] (2)

---

[3] In particular, the evidence adduced by Plaintiff includes the following: (1) Plaintiff's Verified Complaint, which has the force and effect as an affidavit to the extent it is based on personal knowledge (Dkt. No. 1); (2) Plaintiff's affidavit and exhibits thereto (Dkt. No. 4, Attach. 2-7); (3) the declaration of Jonathan Scruggs, counsel for Plaintiff, and exhibit thereto (Dkt. No. 26, Attach. 1 and 2); (4) Plaintiff's second affidavit (Dkt. No. 30); and (5) the affidavit of Dominic Bonasio and exhibits thereto (Dkt. Nos. 31-33). The evidence adduced by Defendants includes the following: (1) the declaration of Stacia Stern, the Assistant to the Vice President for Finance and Business at SUNY-Albany (Dkt. No. 12, Attach. 1); (2) a copy of the new policy, current as of June 2011, provided at the Hearing on August 10, 2011 (Hrg. Tr. at 6-7); (3) the first declaration of Janet M. Thayer, an Associate General Counsel for SUNY (Dkt. No. 24); and (4) the second declaration of Janet M. Thayer and exhibits thereto (Dkt. No. 28).

[4] For example, the Court notes that the challenged policy required that, to speak at SUNY-Albany, Plaintiff had to do the following: (1) apply for, and be issued, a revocable permit; (2) obtain and submit a certificate of insurance with the required amount of coverage; (3) pay a $50 processing fee; (4) wait at least 30 days, and then (5) pay a rental fee of between $250 and $350. (Dkt. No. 4, Attach. 4-7.) Generally, the new policy designates a public forum for

on August 9, 2011, SUNY-Albany's University Administration adopted the new policy; (3) on August 9, 2011, the new policy was posted on the SUNY-Albany Controller's website under a link entitled "Public Forum Free Speech"; (4) since August 9, 2011, no third party has been denied a request to use SUNY-Albany's designated public forum for free speech purposes;[5] (5) on December 9, 2011, SUNY-Albany's University Council approved the new policy; (6) on December 22, 2011, the SUNY Vice Chancellor and General Counsel issued a memorandum to the Presidents of the 30 state-operated SUNY campuses, advising them to not use the challenged policy, and recommending that they instead use a policy like SUNY-Albany's new policy; and (7) the general SUNY policy of which Plaintiff also complains in his Complaint is no impediment to Plaintiff's future speech at SUNY-Albany, because the general SUNY policy regards only non-commercial "organizations" (such governmental entities, private charities, and partisan political organizations) seeking to use university-controlled facilities, not third-party *individuals* (or groups of individuals) seeking to use public fora for purposes of free speech (and, in any event, the general SUNY policy permits SUNY campuses–including SUNY-Albany–to

---

free speech purposes, and permits third parties to use the designated public forum for free speech purposes on any but a limited number of "blacked out" days (on which SUNY-Albany uses the entire campus for core purposes), if they do the following: (1) complete a one-page application; (2) file the application with the SUNY-Albany Comptroller three days before the requested date of use; (3) pay for any costs for parking on campus; (4) be responsible for picking up, and properly disposing of, any materials that they disseminate during the speech on the designated public forum; and (5) not use a megaphone or non-University provided microphone. (Dkt. No. 28.)

[5]    When Dominic Bonasio attempted to speak on December 14, 2011, it was not at SUNY-Albany but SUNY-New Paltz. (Dkt. Nos. 31-33.) Moreover, it was eight days before the SUNY Vice Chancellor and General Counsel issued a memorandum to the Presidents of the 30 state-operated SUNY campuses (including SUNY-New Paltz), advising them to not use the challenged policy, and recommending that they instead use a policy like SUNY-Albany's new policy. (Dkt. No. 28.)

adopt the new policy referenced above).[6]

Based on these facts, the Court finds that the threat of arrest or citation was so eliminated when SUNY-Albany's University Administration changed SUNY-Albany's policy on August 9, 2011, as to render unreasonable Plaintiff's subjective belief that it would have been futile for him to again attempt to speak at there after he was informed on the policy change on August 9, 2011.[7] More importantly, the Court finds that, particularly in light of the approval of the new policy by SUNY-Albany's University Council on December 9, 2011, it is not likely that Plaintiff would again experience either the First Amendment violation or the Fourteenth Amendment violation that he alleges in his Complaint if he again attempted to speak at SUNY-Albany in the future.

Simply stated, while the change of policy does not moot Plaintiff's claims in this action, it is "an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Here, the Court finds that this "important factor" weighs decidedly in favor of concluding that "there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983); *see, e.g., Dean v. Blumenthal*, 577 F.3d 60, 64-65 (2d Cir. 2009) (holding that, while political candidate's free-speech claim itself was not moot, injunctive relief was inappropriate, because there was no

---

[6] (Dkt. No. 4, Attach 3, at §§ I.E., I.K., and "Definitions" Section [giving examples of organizations governed by policy, and then defining policy].)

[7] The Court notes that Plaintiff's colleague, Dominic Bonasio, found it sufficient to test the waters at SUNY-New Paltz merely through the exchange of email messages with the appropriate employee at SUNY-New Paltz. (Dkt. Nos. 31-33.) Nonetheless, Plaintiff has chosen not to do even that, during the five months that have passed since his being advised of SUNY-Albany's policy change.

9

"reasonably concrete basis to anticipate that the expired rule will be reenacted in a form that will raise the same questions"); *Levin v. Harleston*, 966 F.2d 85, 87-90 (2d Cir. 1992) (holding that, while professor's free-speech claim itself was not moot, injunctive relief was inappropriate, because the professor had not demonstrated irreparable harm that was "real and imminent, not remote," given that college disciplinary committee had ultimately recommended that the professor not be disciplined).

For these reasons, the Court concludes that Plaintiff's motion is unsupported by a showing of likely irreparable injury in the absence of the Court's granting of the request. For this reason, Plaintiff's motion is denied.

In the alternative, the Court finds that, to the extent the motion requests a preliminary injunction that prevents the application of the allegedly offensive policies on *any SUNY campus*, that motion is not sufficiently related to the misconduct alleged in Plaintiff's Complaint, which regards the application of the referenced policies only on *the SUNY-Albany campus*. *See, supra*, note 1 of this Decision and Order. As the Eighth Circuit Court of Appeals explained in *Devose v. Harrington*, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming the denial of a prisoner's motion for preliminary injunctive relief where his complaint alleged a denial of adequate medical treatment and his motion for preliminary injunction sought relief for alleged retaliation based on filing the lawsuit).[8] As a result, to the extent that a motion that does not bear

---

[8] *Accord, Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Colvin v. Caruso,* 605 F.3d 282, 300 (6th Cir. 2010); *Martin v. Keitel*, 205 F. App'x 925, 929 (3rd Cir. 2006); *Omega World Travel, Inc. v. Trans*

such a relationship, it "has nothing to do with preserving the district court's decision-making power over the merits of [the plaintiff's] lawsuit." *Devose*, 42 F.3d at 471.[9]

For these reasons, the Court alternatively concludes that, to the extent that Plaintiff's motion requests a preliminary injunction that prevents the application of the allegedly offensive policies on *any SUNY campus*, that motion is unsupported by a showing of likely irreparable injury in the absence of the Court's granting of the request.

> B. **Whether Plaintiff Has Established Either (1) a Likelihood of Success on the Merits of Its Case, or (2) Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation and a Balance of Hardships Tipping Decidedly in His Favor**

Because the Court has already concluded that adequate grounds exist upon which to base a Decision and Order denying Plaintiff's motion for a preliminary injunction, the Court need not address whether Plaintiff has established the second element of the legal standard governing such motions. However, in the interest of thoroughness, the Court will briefly do so.

As an initial matter, the Court notes that, where, as here, the requested preliminary injunction would stay state action taken in the public interest pursuant to a statutory or regulatory

---

*World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *see also Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985) ("[S]ince Stewart failed to commence an action in the district court with regard to his claim of improper suspension without pay prior to filing his motion for a preliminary injunction, the district court lacked jurisdiction over Stewart's motion for injunctive relief relating to the same conduct.").

[9] The Court notes that, even if Plaintiff's Complaint had asserted a claim based on the application of the allegedly offensive policies on SUNY campuses other than SUNY-Albany, Plaintiff would not have standing to pursue such a claim because his Complaint does not allege facts plausibly suggesting that he attempted to speak at any of those campuses. (*See generally* Dkt. No. 1.) The Court notes also that Dominic Bonasio, who has adduced an affidavit stating that he unsuccessfully attempted to speak at SUNY-New Paltz, is not a plaintiff in this action. Furthermore, his attempt to speak at SUNY-New Paltz post-dates the filing of Plaintiff's Complaint by nearly seven months.

scheme, the less rigorous burden of proof envisioned by the phrase "fair ground for litigation" does not apply, and instead the party seeking injunctive relief must satisfy the more rigorous burden of proof envisioned by the phrase "likelihood of success." *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003); *Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093 (2d Cir. 1991). Perhaps for this reason, Plaintiff has not even bothered to argue that there exists sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. (*See generally* Dkt. No. 4, Attach. 8; Dkt. No. 16; Dkt. No. 26.) The issue before the Court, then, is only whether Plaintiff has established a likelihood of success on the merits of his case.

For the sake of brevity, the Court will assume, without deciding, that the injunctive relief requested by Plaintiff is prohibitory in nature and thus not subject to the higher standard of proof required of mandatory injunctions. This assumption is not an easy one to make, however, given the fact that (1) the practical need (and, indeed, the regulatory requirement) of having a policy governing the use of SUNY-Albany's facilities by third-parties requires SUNY-Albany to enact a new policy if its abandons the challenged policy, (2) the requested injunction would effectively provide Plaintiff will all the relief he seeks, and (3) the administrative chaos and security risks caused by the requested injunction could not be undone by a judgment favorable to Defendants on the merits at trial. *See Bronx Household of Faith v. Bd. of Educ. of City of New York,* 331 F.3d 342, 345-48, 350 (2d Cir. 2003) (finding that injunction, which enjoined defendants from enforcing school district policy governing church group's use of space in school, was mandatory in nature); *Dyno v. SUNY Binghamton*, 09-CV-0313, 2009 WL 1663990, at *1-3, 8 (N.D.N.Y. June 15, 2009) (finding that, partially because injunction would have required defendants to

change radio station's profanity policy, the injunction was mandatory and not simply prohibitory in nature).

Similarly, the Court will assume, without deciding, that, during the time in question, SUNY-Albany's Campus Center Pavilion constituted a *designated public forum* (subjecting the challenged policy to strict scrutiny) rather than a *limited public forum* (subjecting the challenged policy to only heightened scrutiny).[10] This assumption is also not an easy one to make given that at least some case law exists suggesting that SUNY-Albany's Campus Center Pavilion may well have constituted a limited public forum during the time in question. *See, e.g., Rosenfeld v. Sample*, 820 F.2d 38, 39, 41 (2d Cir. 1987) (agreeing with district court that student union at SUNY-Buffalo campus was a limited public forum subjecting the challenged policy to only heightened scrutiny), *aff'g*, 82-CV-0490, 1986 WL 13940, at *4 (W.D.N.Y. Dec. 11, 1986); *Fox v. Bd. of Tr. of SUNY*, 841 F.2d 1207, 1210, 1213-14 (2d Cir. 1988) (agreeing with district court that campus residence halls of SUNY campuses constituted limited public fora subjecting the challenged policy to only heightened scrutiny), *rev'g on other grounds*, 649 F. Supp. 1393, 1401 (N.D.N.Y. 1986) (McCurn, J.); *Hickok v. Orange Cnty. Comty. College*, 472 F. Supp.2d 469, 475 (S.D.N.Y. 2006) ("The lecture hall at the College is a limited public forum."); *Schuloff v. Murphy*, 96-CV-1242, 1997 WL 588876, at *3 (E.D.N.Y. Sept. 17, 1997) (concluding that facilities on the campus of the City University of New York constituted a "limited public

---

[10] *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) ("When the State establishes a limited public forum, . . . [t]he State's power to restrict speech . . . [on that forum] is not without limits. The restriction must not discriminate against speech on the basis of viewpoint, . . . and the restriction must be reasonable in light of the purpose served by the forum . . . .") [internal quotation marks and citations omitted].

forum").[11]

In any event, operating on the above-described assumptions, the Court finds that the merits of the case hinge on whether (1) the challenged policy was necessary to serve a compelling state interest, and (2) whether the exclusion set forth in the policy was narrowly drawn to achieve that interest. *See Widmar v. Vincent*, 454 U.S. 263, 270 (1981). Here, the Court finds that, while it is certainly possible that Plaintiff will succeed at trial on the merits of his claims, he has simply not established a *likelihood* of success on those claims, based on the current record.

More specifically, the Court finds that the record sufficiently establishes that the challenged policy is content-neutral, narrowly tailored to serve a significant governmental interest, and leaves open alternatives for communication. For example, the Court finds that the following facts are clear from the record: (1) the University has been experiencing budget reductions since at least 2008, and is currently experiencing a fiscal crisis, causing a suspension of five academic programs, the non-replacement of approximately 350 faculty and staff who have retired or resigned, and the need for every dollar to be used toward the University's core mission;[12] (2) the use of University facilities, including outdoor space, by the public taxes the University's use of janitorial services and police services, and results in costly overtime for staff;[13] (3) requiring a certificate of insurance helps ensure that state tax dollars (which account

---

[11] *See also Widmar v. Vincent*, 454 U.S. 263, 268, n.5 (1981) (explaining that a university "differs in significant respects from public forums such as streets or parks or even municipal theaters," and it need not "make all of its facilities equally available to students and nonstudents alike," nor must it "grant free access to all of its grounds or buildings" ).

[12] (Dkt. No. 12, Attach. 1, ¶¶ 5, 11, 12; Dkt. No. 24, ¶¶ 3, 5, 8.)

[13] (Dkt. No. 12, Attach. 1, ¶ 3; Dkt. No. 24, ¶ 2.)

for approximately 13% of the University's total budget) are not used to pay damages for liability stemming from the use of campus facilities by the public;[14] (4) requiring application and use fees helps ensure that student tuition and fees (which account for approximately 87% of the University's total budget) are not used to fund the use of campus facilities by the public;[15] (5) requiring a 30-day waiting period helps reduce costs (including staff overtime) resulting from having to prepare the facilities for use on an emergency basis, chaos resulting from overbooking, and security risks resulting from a lack of necessary security;[16] (6) these financial, administrative and safety concerns applied to Plaintiff's case, particularly given that, in the past, his speech at other SUNY campuses drew crowds requiring police presence, if not intervention;[17] (7) nonetheless, when Plaintiff inquired about speaking at SUNY-Albany on April 21, 2009, he was informed of the revocable-permit process, but he was told that the process might take less than 30 days to complete, he was not told that he could not speak to people on a one-on-one basis on campus, and he was not threatened with arrest;[18] (8) in the alternative to complying with the procedure for speaking at the Campus Center Pavilion, it appears that Plaintiff had access to, and could have spoken on, the sides or corners of eight "public city streets," which he asserts "run around and through" the part of SUNY-Albany's on which he desired to speak;[19] and (9) the challenged policy is entirely content neutral.[20]

---

[14]     (Dkt. No. 12, Attach. 1, ¶ 8; Dkt. No. 24, ¶ 8.)

[15]     (Dkt. No. 12, Attach. 1, ¶¶ 8, 12; Dkt. No. 24, ¶ 8.)

[16]     (Dkt. No. 12, Attach. 1, ¶¶ 3, 13; Dkt. No. 24, ¶ 2.)

[17]     (Dkt. No. 24, ¶ 8.)

[18]     (Dkt. No. 12, Attach. 1, ¶¶ 15-17.)

[19]     (Dkt. No. 1, ¶¶ 21-25 [Plfs. Verified Compl.].)

[20]     (Dkt. No. 4, Attach. 4-7.)

For this alternative reason, the Court denies Plaintiff's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 4) is **DENIED**.

Dated: January 12, 2012
      Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
U.S. District Judge