UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES DEFERIO,

                           Plaintiff,

v.                                                          5:11-CV-0563
                                                            (GTS/RFT)
BD. OF TR. OF THE STATE UNIV. OF NEW YORK;
NANCY L. ZIMPHER, in her official capacity as
Chancellor of the State Univ. of New York; GEORGE
M. PHILIP, in his official capacity as President of State
Univ. of New York at Albany; and STACY STERN,
individually and in her official capacity as assistant to
the Vice President at State Univ. of New York at Albany,

                           Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

ALLIANCE DEFENDING FREEDOM                                  JONATHAN A. SCRUGGS, ESQ.
  Counsel for Plaintiff                                     NATHAN W. KELLUM, ESQ.
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117

LAW OFFICE OF PHILIP J. VECCHIO, P.C.                       PHILIP J. VECCHIO, ESQ.
  Co-counsel for Plaintiff
24 Huntswood Lane
East Greenbush, NY 12061

HON. ERIC T. SCHNEIDERMAN                                   ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York                  Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by James Deferio ("Plaintiff") against the Board of Trustees of the State University of New York, Nancy L. Zimpher, George M. Philip, and Stacy Stern (together "Defendants"), is Plaintiff's motion for attorneys' fees and costs. (Dkt. No. 53.) For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint and the Procedural History

Because the parties have (in their motion papers) demonstrated an adequate understanding of Plaintiff's claims and the relevant procedural history of this action, the Court will not recite those facts in detail in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those facts only where necessary in this Decision and Order.

On or about May 19, 2011, Plaintiff filed his Complaint in this civil rights action. (Dkt. No. 1.) Generally, Plaintiff's Complaint asserts a free-speech claim under the First Amendment and a due process claim under the Fourteenth Amendment, arising from his unsuccessful attempt to freely express his religious beliefs on the campus of the State University of New York at Albany ("SUNY Albany") on October 13, 2008, and April 21, 2009, for which he seeks declaratory judgment, preliminary injunction, permanent injunction, nominal damages, attorneys' fees and cost. (*Id.*)[1] At the time he commenced this action, Plaintiff filed a motion for

---

[1]    On April 19, 2012, Plaintiff filed an Amended Complaint, which added a claim against Defendant Philip in his individual capacity. (Dkt. No. 46.)

a preliminary injunction, seeking an order enjoining Defendants from applying the challenged policy so as to prevent Plaintiff or other speakers from "engaging in their desired and constitutionally protected speech activities." (*See generally* Dkt. No. 4.)

On August 9, 2011, the day before the hearing on Plaintiff's motion for preliminary injunction was scheduled to occur, Defendants filed a letter stating that "SUNY Albany is no longer enforcing its policy that is the subject of this proceeding." (Dkt. No. 20.) On August 10, 2011, the Court held a hearing on Plaintiff's motion for preliminary injunction. During the hearing, Defendants' counsel represented that an interim policy was "going into effect today." (Hrg. Tr. at 1-2.) On December 9, 2011, the Albany University Council approved and adopted the new policy. (Dkt. No. 28, at 2.) The new policy is more permissive and reasonable than was the challenged SUNY Albany policy. (Dkt. No. 34, at 7 & n.4.)

On January 12, 2012, the Court issued a Decision and Order denying Plaintiff motion for a preliminary injunction. (Dkt. No. 34, at 2.) In its Decision and Order, the Court found, inter alia, that Plaintiff did not establish "a likelihood of irreparable harm if the requested relief was denied." (*Id.* at 10.) More specifically, the Court found that, in light of the changed policies, "it [was] not likely that Plaintiff would again experience either the First Amendment violation or the Fourteenth Amendment violation that he allege[d] in his Complaint if he again attempted to speak at SUNY-Albany in the future." (*Id.* at 9.)

While Plaintiff's requests for injunctive relief were rendered moot by the Court's Decision and Order of January 12, 2012, Plaintiff's underlying constitutional claim for nominal damages and attorneys' fees remained pending before the Court. The parties thereafter explored settlement options. (Dkt. No. 55, at ¶ 13 [Affirm. of Kerwin].)

On approximately April 12, 2012, pursuant to Fed. R. Civ. P. 68, Defendants served Plaintiff with an Offer of Judgment, offering to allow judgment to be taken against them in this action for the sum of $1.00 plus reasonable attorneys' fees and allowable costs and disbursements (to be determined by the Court upon motion), but expressly disclaiming any admission of liability or wrongdoing on the part of Defendants. (Dkt. No. 55, Attach. 1, at 1-4.) After Plaintiff asserted that the Offer of Judgment was invalid because of a purported defect in the caption, Defendants served Plaintiff with an identical Offer of Judgment, with an amended caption, on April 27, 2012. (Dkt. No. 55, Attach. 1, at 5-8.) On approximately May 14, 2012, Plaintiff rejected Defendants' Offer of Judgment. (Dkt. No. 53, Attach. 7, at 7; Dkt. No. 55, at ¶ 16.)

Following this rejection, the parties resumed settlement negotiations. On August 28, 2012, the parties reached a settlement agreement and filed a proposed Consent Order with the Court. (Dkt. No. 51.) On August 30, 2012, the Court signed the proposed Consent Order. (Dkt. No. 52.) A comparison of the Consent Order and the Offer of Judgment reveals two main differences: (1) while the Offer of Judgment expressly disclaimed any admission of liability on the part of Defendants, the Consent Order made no mention of liability; and (2) while the Offer of Judgment contained an agreement to pay attorneys' fees (in an amount to be determined by the Court), the Consent Order did not. (*Compare* Dkt. No. 55, Attach. 1, at 1-4 *with* Dkt. No. 52, at 1-2; *see also* Dkt. No. 56, at 6 [Plf.'s Reply].)

**B.      Parties' Briefing on the Current Motion**

On September 27, 2012, Plaintiff filed a motion, pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2), to recover $56,057.25 in attorneys' fees, costs and expenses. (*See generally* Dkt. No. 53.) In support of his motion, Plaintiff submitted declarations, exhibits

detailing the time allocated to particular tasks and the costs incurred, and a memorandum of law in chief.  (*Id.*)

### 1.      Plaintiff's Memorandum of Law in Chief

Generally, in his memorandum of law in chief, Plaintiff asserts four arguments.   (*See generally* Dkt. No. 53, Attach. 12 [Plf.'s Memo. of Law].)  First, Plaintiff argues, he is entitled to attorneys' fees and expenses under 42 U.S.C. § 1988(b) because he is a "prevailing party" in that, through a Consent Order, he was awarded the maximum amount of damages possible for the violation of his constitutional rights (i.e., $1.00 of nominal damages), thus acknowledging the past violation of Plaintiff's constitutional rights through Defendants' prior policy, and materially altering the legal relationship between Plaintiff and Defendants.  (*Id*. at 1-4.)

Second, Plaintiff argues, the hourly rates that he requests (i.e., $275 per hour for Attorney Nathan Kellum, $225 per hour for Attorney Jonathan Scruggs, $225 per hour for Attorney Philip Vecchio, and $80 per hour for Paralegal Michael Kane) are reasonable in light of (a) the time and labor required, (b) the novelty and difficulty of the legal issues, (c) the level of skill required to perform the legal services properly, (d) the attorneys' preclusion of other employment, (e) the attorneys' customary hourly rate, (f) the contingent nature of the fee, (g) the time limits imposed by the lawsuit, (h) the resulting vindication of Plaintiff's constitutional rights, (i) the experience and skills of the attorneys, (j) the undesirability of the case to other attorneys, and (k) the amount of awards in similar cases.  (*Id*. at 4-17.)

Third, Plaintiff argues, the number of hours requested is reasonable in that (a) the hours are substantiated by detailed and contemporaneous billing records, (b) the hours are related to a common set of facts and a common legal theory, and (c) the hours produced a substantial degree of success).  (*Id*. at 17-22.)

Fourth, Plaintiff argues, the costs and expenses requested (specifically, travel expenses, filing fees, service-of-process fees and admission fees) are reasonable because they are not associated with routine office overhead but are identifiable out-of-pocket disbursements that are ordinarily charged to clients. (*Id.* at 22-23.)

### 2.    Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Defendants assert essentially four arguments. (Dkt. No. 55, Attach. 2 [Defs.' Opp'n Memo. of Law].) First, Defendants argue, no award of attorneys' fees is warranted in this action at all because, even though Plaintiff has formally prevailed in this action, his overall degree of success has been very limited (in that he pursued an obviously moot motion for a preliminary injunction for five months, lost that motion, and then settled the case for $1.00 on the same terms as offered by Defendant four months before). (*Id.* at 6 [attaching page "4" of Defs.' Opp'n Memo. of Law].)

Second, Defendants argue, three of the four hourly rates requested by Plaintiff in his motion are unreasonable because, pursuant to the governing law, while Paralegal Kane is indeed entitled to an hourly rate of $80 per hour, Attorneys Kellum and Vecchio are entitled to an hourly rate of only $210 per hour, and Attorney Scruggs is entitled to an hourly rate of only $150 per hour. (*Id.* at 7 [attaching page "5" of Defs.' Opp'n Memo. of Law].)

Third, Defendants argue, the number of hours requested is unreasonable, because (1) Defendants were the "prevailing parties" on Plaintiff's motion for a preliminary injunction and are thus entitled to a "set-off" for the $30,369 in fees and costs sought by Plaintiff in bringing that motion, (2) in the alternative, the hours spent on the motion should be reduced because the motion was pursued despite the fact that Plaintiff's claims for injunctive relief were moot, (3) Plaintiff is not entitled to attorneys' fees incurred after the making of Defendant's Offer of

Judgment (on April 27, 2012), which was identical to the Consent Order in that it did not contain a provision admitting liability, and (4) the remainder of the hours were redundant, unnecessary, or improper (for example, the time spent drafting a "very basic" and "straightforward" First Amendment complaint, the time spent by Paralegal Kane helping Plaintiff establish a cause of action through pre-litigation activities, and the time spent on the motion for attorneys' fees, which constituted too high a percentage of the time spent on the case). (*Id*. at 7-17 [attaching pages "5" through "15" of Defs.' Opp'n Memo. of Law].)

Fourth, Defendants argue, the costs and expenses requested are unreasonable, because (a) some of those costs and expenses were unnecessary for the reasons stated above, (b) Defendants did not cause the airfare penalties and travel agent booking fees incurred by Plaintiff as a result from the rescheduled or canceled mediation, and (c) the fees and costs resulting from Attorney Scruggs' pro hac vice admission were not necessary (given that Plaintiff has two local attorneys listed on the docket as representing him). (*Id*. at 11-12 [attaching pages "9" and "10" of Defs.' Opp'n Memo. of Law].)

### 3.      Plaintiff's Reply Memorandum of Law

Generally in his reply memorandum of law, Plaintiff asserts four arguments. (*See generally* Dkt. No. 56 [Plf.'s Reply].) First, Plaintiff argues, he is entitled to at least some attorneys' fees and expenses, because (a) neither the loss of one motion or the length of a case negates Plaintiff's prevailing-party status or the practical success achieved in the case, (b) Plaintiff lost the motion only because he forced SUNY Albany to change its policy during the pendency of the motion, and (c) Plaintiff obtained the maximum amount of damages possible for the violation of his constitutional rights. (*Id.* at 1-2.)

Second, Plaintiff argues, the requested hourly rates are reasonable, because (a) the factors analyzed by Plaintiff in its memorandum of law in chief determine a reasonable hourly rate, (b) the rates approved in the case relied on by Defendants (*Lore v. City of Syracuse*, 670 F.3d 127 [2d Cir. 2012]) are "lagging behind the market." (*Id*. at 2-3.)

Third, Plaintiff argues, the requested hours and expenses are reasonable, because (a) the time spent on the preliminary injunction motion is both compensable (in that it was related factually and legally to Plaintiff's successful claims) and reasonable (in that it was not excessive, especially given the three rounds of supplemental briefing in the case), (b) the time spent after the Offer of Judgment is compensable (in that the Offer of Judgment contained a disclaimer of liability, which would have "possibly" prevented Plaintiff from obtaining prevailing-party status), (c) the pre-litigation time spent by Paralegal Kane is reasonable (in that it occurred after Plaintiff first spoke at SUNY Albany, in October of 2008), (d) the time spent on the Complaint is reasonable (in that the Alliance Defending Freedom spent only 22.8 hours in drafting and revising the Verified Complaint, which involved "novel" First Amendment arguments in the university context), (e) the time spent on Plaintiff's motion for attorneys' fees is reasonable (in that it amounts to only 13 percent of the total hours claimed), and (f) the total time requested is reasonable because counsel achieved Plaintiff's exact goals (i.e., obtaining nominal damages and a chance in SUNY Albany's policy) and advanced the public interest. (*Id*. at 4-10.)

Fourth, Plaintiff argues, the requested costs and expenses are reasonable, because (a) cancelled travel is compensable (in that Plaintiff did not cause the cancellations, and the resulting costs are routinely passed along to the client), and (b) admission fees and time are compensable and were necessary. (*Id*. at 7-8.)

## II.    RELEVANT LEGAL STANDARD

Under 42 U.S.C. § 1988, there is a two-part test for determining whether a party is entitled to receive reasonable attorneys' fees.   First, the party seeking attorneys' fees must be a "prevailing party."  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).  A party is considered a "prevailing party" if "actual relief on the merits of his claim materially alters the legal relationship between the parties."  *Rivera v. Horton*, 7 F. Supp.2d 147, 149 (N.D.N.Y. 1998) (McAvoy, C.J.) (quoting *Farrar*, 506 U.S. at 111-12).   An award of nominal damages, through either an enforceable judgment or a court-ordered consent decree, imparts the status of "prevailing party" upon the plaintiff.  *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (implying that a court-ordered consent decree materially alters the legal relationship between the parties as much as an enforceable judgment on the merits); *see also Farrar*, 506 U.S. at 112 ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988.").   Where a party obtains prevailing-party status, "the court's discretion to deny a fee award to a prevailing plaintiff is narrow."  *N.Y. Gaslight Club, Inc., v. Carey*, 447 U.S. 54, 68 (1980).   "[I]n the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff."  *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

Second, the party seeking attorneys' fees must prove that his requested fee is "reasonable."  *See Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *Kozoi v. Peters*, 12-CV-0823, 2012 WL 5986574, at *2 (N.D.N.Y. Nov. 29, 2012) (McAvoy, J.) (citing *Blum v. Stenson*, 465 U.S. 886, 897 [1984]).   In determining whether the moving party has satisfied its burden, the court must calculate a

"presumptively reasonable fee." *See Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psych. Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). The "presumptively reasonable fee" is calculated by multiplying the (A) reasonable hourly rate by the (B) number of reasonably expended hours. *Bergerson*, 652 F.3d at 289.

A reasonable hourly rate is defined as "the rate a paying client would be willing to pay." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007). The court must "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and the court should consider several factors in making its calculation. *See Arbor Hill*, 493 F.3d at 117-18.[2] The court must refer to "the prevailing [market rates] in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum,* 465 U.S. at 895 & n. 11). The Second Circuit recently indicated that a trial court did not abuse its discretion when it found that "[t]he prevailing hourly rates in [the Northern District of New York] . . . are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years of experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals." *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012).

---

[2]     The factors include the following: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

In considering the number of reasonably expended hours, the court "should exclude excessive, redundant or otherwise unnecessary hours," and "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *See Hensley*, 461 U.S. at 434; *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 [2d Cir. 1983]). The court should also consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citing *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 [6th Cir. 1990]).

While the technical nature of a nominal damages award does not affect the "prevailing party" inquiry, "it does bear on the propriety of fees awarded under § 1988." *See Farrar*, 506 U.S. at 114 (stating that success is "the most critical factor" in determining the reasonableness of a fee award). Thus, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. Where a "prevailing party" has obtained a nominal damage award, courts in this Circuit determine whether the "recovery was *de minimis*, such that low attorney's fees or no attorney fees should be awarded." *See Scott v. Hand*, 07-CV-0221, 2010 WL 1507016, at *3 (N.D.N.Y. Apr. 15, 2010) (McAvoy, J.) (quoting *Millea v. Metro-N. R. Co.*, 06-CV-1929, 2010 WL 126186, at *5 [D. Conn. Jan. 8, 2010], *rev'd in part, aff'd in part*, 658 F.3d 154 [2d Cir. 2011]). In making such a determination, courts in this Circuit consider the following factors:

> (1) whether there is a 'substantial difference' between the judgment recovered and the recovery sought, (2) the significance of the legal issue on which the plaintiff claims to have prevailed, and (3) whether the plaintiff accomplished some public goal other than occupying the time and energy of counsel, court, and client.

*Millea*, 2010 WL 126186, at *5 (quoting *Farrar*, 506 U.S. at 121-22 [O'Connor, J., concurring]).

## III.   ANALYSIS

Based on the legal arguments asserted by the parties in Part I of this Decision and Order, and legal standard recited in Part II of this Decision and Order, the Court will, in analyzing the merits of Plaintiff's motion, address the following five issues: (1) whether Plaintiff is a "prevailing party" in this case; (2) whether, despite Plaintiff's prevailing-party status, the Court should deny or significantly reduce his attorneys' fees because his recovery was *de minimis*; (3) whether the hourly rates that Plaintiff requests are reasonable; (4) whether the number of hours that Plaintiff requests is reasonable; and (5) whether the Costs and expenses that Plaintiff requests are reasonable.

### A.   Whether Plaintiff Is a "Prevailing Party" in this Case

After carefully considering the matter, the Court answers this question in the affirmative for the reasons offered in Plaintiff's memorandum of law in chief. (Dkt. No. 53, Attach. 12 [Plf.'s Memo. of Law].) The Court would add only that, in their opposition memorandum of law, Defendants acknowledge that Plaintiff is the "prevailing party," thus lightening Plaintiff's burden on this issue such that, in order to succeed on it, Plaintiff need only show facial merit in support of their argument. (Dkt. No. 55, Attach. 2, at 5 [attaching page "3" of Defs.' Opp'n Memo. of Law].)[3]

---

[3]     *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting . . . of the motion . . . , unless good cause be shown."); *Zuk v. Onondaga Cnty.*, 09-CV-0272, 2011 WL 4344043, at *4 & nn. 1-3 (N.D.N.Y. Sept. 14, 2011) (Suddaby, J.) (reciting point of law and citing cases).

**B.** **Whether the Court Should Nonetheless Deny or Significantly Reduce Plaintiff's Attorneys' Fees Because His Recovery Was *De Minimis***

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 53, Attach. 12, at 1-4 [Plf.'s Memo. of Law]; Dkt. No. 56, at 1-2, 10 [Plf.'s Reply].) The Court would add only the following analysis.

In arguing that Plaintiff's victory was *de minimis*, Defendants place much emphasis on the nominal amount of the damages award. However, as the Second Circuit has observed, "[n]ominal relief does not necessarily a nominal victory make." *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 168 (2d Cir. 2011) (quoting *Farrar*, 506 U.S. at 120-21 [O'Connor, J., concurring]). Rather, as explained above in Part II of this Decision and Order, in making such a determination, courts consider, inter alia, whether the difference between the award sought by a plaintiff and the award actually obtained by the plaintiff was substantial.

Here, there was no difference between the award sought by Plaintiff and the award actually obtained by him. (Dkt. No. 46, at ¶ 2 & "Prayer for Relief" Clause "E" [Plf.'s Am. Compl., seeking, inter alia, "nominal damages" as relief].) As a result, the case principally relied on by Defendants (*Scott v. Hand*, 07-CV-0221, 2010 WL 1507016 [N.D.N.Y. Apr. 15, 2010]) is distinguishable. In addition, that case is distinguishable because (1) the issue in this case was a constitutional one, and (b) Plaintiff in this case prompted Defendants to adopt a new policy for SUNY Albany.[4]

---

[4] While Defendants assert that the new policy was "being considered and undergoing drafts and edits since at least late 2009" (Dkt. No. 55, Attach. 1, at 11, ¶ 5 [Thayer Decl.]), the Court nonetheless finds that Plaintiff's lawsuit prompted the adoption of a new policy for two reasons: (1) Plaintiff was the first individual to challenge the old policy (*id.* at ¶ 4); and (2) Defendants changed their policy a mere two months after Plaintiff filed suit, and indeed implemented a new policy on the day of the hearing for the motion for a preliminary injunction (*see* Dkt. No. 34, at 3-4, 7 & n.4).

## C.    Whether the Hourly Rates Requested Are Reasonable

After carefully considering the matter, the Court answers this question in the affirmative with regard to the rates requested for Attorney Vecchio and Paralegal Kane, but in the negative with regard to the rates requested for Attorneys Kellum and Scruggs.  More specifically, based upon the evidence submitted by Plaintiff and based upon a review of the *Arbor Hill* and *Johnson* factors, the Court finds that the following hourly rates are warranted in this case: $250 per hour for Attorney Kellum, $225 per hour for Attorney Vecchio, $200 per hour for Attorney Scruggs, and $80 per hour for Paralegal Kane.  Moreover, the Court finds that the hourly rate for travel time should be one-half of the attorney's hourly rate.  *See Arbor Hill*, 419 F. Supp.2d at 211 (stating that courts traditionally award only one-half of hourly rates for time spent traveling).[5]

As stated above in Part I.B. of this Decision and Order, Plaintiff argues that Attorney Kellum is entitled to a fee of $275 per hour, that Attorneys Scruggs and Vecchio are each entitled to a fee of $225 per hour, and that Paralegal Kane is entitled to a fee of $80 per hour. (Dkt. No. 53, Attach. 12, at 8 [Plf.'s Memo. of Law].)  This Court disagrees with the rates requested for Attorneys Kellum and Scruggs, and reduces those rates for two reasons.  First, it would be unreasonable to expect a client to pay an attorney with (at the time) approximately five years of litigation experience (Mr. Scruggs) at the same rate customarily charged by an attorney in this District with more than 20 years of litigation experience (Mr. Vecchio).  (*Compare* Dkt. No. 53 [Scruggs Decl.] *with* Dkt. No. 53 [Vecchio Decl.].)  Second, the Court does not believe that the issues presented in this action were as "novel" as asserted by Plaintiff.  Indeed, several of those issues had been litigated by the Alliance Defending Freedom by the time Plaintiff filed

---

[5]    This one-half hourly rate was factored into the fees requested by Plaintiff (through cutting the number of hours billed for travel in half).  (Dkt. No. 53, Attach. 6, at 2; Dkt. No. 53, Attach. 7, at 15, 22; Dkt. No. 53, Attach. 8, at 9.)

his case in this action on May 19, 2011. *See, e.g.*, *McGlone v. Bell*, 10-CV-0029, Complaint (M.D. Tenn. filed March 29, 2010); *McGlone v. Bell*, 10-CV-0029, Motion for Preliminary Injunction (M.D. Tenn. filed March 29, 2010); *Bloedorn v. Keel,* 09-CV-0055, Complaint (S.D. Ga. filed July 13, 2009); *Bloedorn v. Keel,* 09-CV-0055, Motion for Preliminary Injunction (S.D. Ga. filed July 13, 2009); *Sonnier v. Crane*, 08-CV-4800, Complaint (E.D. La. filed Nov. 4, 2008); *Sonnier v. Crane*, 08-CV-4800, Motion for a Preliminary Injunction (E.D. La. filed Nov. 4, 2008).

Having said that, the Court does not agree with Defendants that Attorneys Kellum and Vecchio should be awarded fees at a rate of only $210 per hour and that Attorney Scruggs should be awarded fees at a rate of only $150 per hour, in accordance with the prevailing market rates presented in *Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012). (Dkt. No. 55, Attach. 2, at 7 [attaching page "5" of Defs.' Opp'n Memo. of Law].) The Court reaches this conclusion for two reasons. First, the Second Circuit explicitly stated that "recent surveys in the Northern District have indicated that, for a civil rights matter, [attorneys' fee rates] are higher than $210 [per hour and $150 per hour for less experienced attorneys]."[6] *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012). Indeed, as far back as 2009, courts in this District have awarded fees to victorious civil rights attorneys at rates far in excess of $210 and $150 per hour. *See Price v. New York State Bd. of Elections*, 06-CV-1083, 2009 WL 4730698, at *3 (N.D.N.Y. Dec. 4, 2009) (Sharpe, J.) (collecting cases from between 2006 and 2009). Second, the Court notes the specialized experience of Plaintiff's attorneys in vindicating religious speech rights (including

---

[6]     Much of this has to do with the fact that in *Lore v. City of Syracuse*, the market rates approved of by the Second Circuit were the prevailing market rates in the Northern District in 2009. Inflation has caused market rates to rise since then.

such rights on university campuses). The Court does not doubt that this experience played a key role in achieving the result in this case.

### D. Whether the Number of Hours Requested Is Reasonable

Based on the legal arguments asserted by the parties in Part I of this Decision and Order, this general issue consists of four discrete issues: (1) whether the Court should preclude fees for work on the motion for a preliminary injunction because Defendants prevailed on that motion; (2) whether, in the alternative, the Court should reduce the hours spent on Plaintiff's preliminary injunction motion because that motion was pursued despite the fact that Plaintiff's claims for injunctive relief were moot; (3) whether the Court should preclude attorneys' fees for work performed after Plaintiff rejected Defendants' Offer of Judgment; and (4) whether the remaining hours were redundant, unnecessary, or improper (for example, the time spent drafting the Complaint, the time spent litigating the motion for a preliminary injunction, the time spent helping Plaintiff before the filing of the Complaint, and the time spent on the motion for attorneys' fees).

### 1. Whether the Court Should Preclude Fees for Work on the Motion for a Preliminary Injunction Because Defendants Prevailed on that Motion

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 53, Attach. 12, at 19-22 [Plf.'s Memo. of Law]; Dkt. No. 56, at 1-2, 4-6 [Plf.'s Reply].) The Court would add only the following analysis.

Defendants argue that, because they were a "prevailing party" on the motion for a preliminary injunction, they are entitled to "a set-off for the amount of any attorneys' fees and costs sought by [P]laintiff in bringing and litigating the motion for a preliminary injunction."

(Dkt. No. 55, Attach. 2, at 7-9 [attaching pages "5" through "7" of Defs.' Opp'n Memo. of Law].)  To support their position, Defendants rely on the case of *Espada v. Rosado*.  (*Id.*)  *Espada* supports the point of law that a defendant who defeats a plaintiff's motion for a preliminary injunction is the "prevailing party" with regard to that motion and is thus entitled to recover attorneys' fees in opposing that motion–if it is later determined that the plaintiff's claims were frivolous, unreasonable, or groundless, or that they continued to be litigated after they clearly became so.  *See Espada v. Rosado*, 00-CV-6469, 2001 WL 1020549, at *3-4 (S.D.N.Y. Sept. 5, 2001).  *Espada* does not support the point of law that a defendant who defeats a plaintiff's motion for a preliminary injunction is the "prevailing party" with regard to that motion and is thus entitled to recover attorneys' fees in opposing that motion–where the plaintiff ultimately prevails in the case.

Plaintiff is correct that generally, under 42 U.S.C. § 1988, a party is entitled to recover time spent on an unsuccessful motion as long as that motion was related to the case's successful outcome and was not frivolous.  *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1342-43 (2d Cir. 1994) (finding that it was not an abuse of discretion for the district court to award the plaintiff attorneys' fees for unsuccessfully opposing a summary judgment motion because that opposition was "thoroughly intermingled" with the plaintiff's successful claims); *Luessenhop v. Clinton Cnty.*, 558 F. Supp.2d 247, 256 (N.D.N.Y. 2008) (Treece, M.J.) ("[A] prevailing party is not limited to recovery on successful motions alone.  Indeed unsuccessful motions too are compensable as long as they are not frivolous."); *Blissett v. Casey*, 969 F. Supp. 118, 130 (N.D.N.Y. 1997) (McCurn, J.) ("Even though plaintiff did not prevail on his interlocutory appeal motion, in the court's opinion, the argument advanced by plaintiff in that motion was not so untenable as to rise (or sink, as the case may be), to the level of a frivolous motion. Moreover, as

the record demonstrates, clearly plaintiff Blissett prevailed on significant issues in this case.").[7]

Here, Defendant does not contend that Plaintiff's unsuccessful motion was frivolous. (*See generally* Dkt. No. 55, Attach. 2 [Defs.' Opp'n Memo. of Law].) Indeed, that motion was moot only because it prompted a change of the challenged policy. *See, supra,* note 4 of this Decision and Order. Plaintiff's victorious constitutional claim and his unsuccessful motion for a preliminary injunction arose out of a "common core of facts": Defendants' campus policy and actions violating Plaintiff's First Amendment rights. As a result, the Court finds it appropriate to award attorneys' fees relating to his unsuccessful motion for preliminary injunction.

> **2.     Whether, in the Alternative, the Court Should Reduce the Hours Spent on Plaintiff's Preliminary Injunction Motion Because that Motion Was Pursued Despite Being Moot**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 53, Attach. 12, at 20-21 [Plf.'s Memo. of Law]; Dkt. No. 56, at 4-6 & n.2 [Plf.'s Reply].) The Court would add only the following analysis.

It is true that Plaintiff did not abandon the motion when, on August 8, 2011, he was informed by letter that Defendants would no longer be enforcing the challenged policy, or, on August 10, 2011, when he was informed in the hearing that Defendants intended to pass a new policy. (Dkt. No. 20.) However, Defendants did not come to the hearing with *evidence* that the

---

[7]     *Cf. Hensley*, 461 U.S. at 434-35 ("[W]here a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief . . . [,] two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? . . . Many civil rights cases will present only a single claim. . . . Much of counsel's time will be devoted generally to the litigation as a whole, . . . [T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

new policy had been adopted, or even that the challenged policy had been abandoned. Rather, Plaintiff had to wait until December 22, 2011, for Defendants to produce evidence that the new policy had been adopted. (Dkt. No. 28.) Furthermore, the Court required two rounds of post-hearing briefing by Plaintiff. (Dkt. Nos. 26, 30, 31, 32, 33.) Under the circumstances, it was reasonable for Plaintiff to continue to litigate his motion until a decision was issued by the Court on January 12, 2012. (Dkt. No. 34.)

### 3. Whether the Court Should Preclude Attorneys' Fees for Work Performed After Plaintiff Rejected Defendants' Offer of Judgment

After carefully considering the matter, the Court answers this question in the negative.

As a threshold matter, the Court would have difficulty finding that the Consent Order that Plaintiff finally obtained was more favorable than Defendants' Offer of Judgment. The two main differences between the Consent Order and Offer of Judgment were as follows: (1) the Offer of Judgment contained a disclaimer of any admission of liability, while the Consent Order did not; and (2) the Offer of Judgment contained an agreement to pay attorneys' fees (in an amount to be determined by the Court), while the Consent Order did not.

With regard to the first difference (i.e., the disclaimer of liability), the absence of such a disclaimer from the Consent Order does not appear more favorable to Plaintiff than was the presence of the disclaimer in the Offer of Judgment. From a review of the motion papers and governing law, the Court perceives three arguable reasons that the absence of such a disclaimer might be favorable to Plaintiff: (a) it carries precedential effect in future cases against Defendants; (b) it renders Plaintiff a prevailing party for purposes of the award of attorneys' fees; and (c) it enables Plaintiff to argue that his rights were vindicated, providing him with emotional satisfaction. The first arguable reason (i.e., precedential effect) appears both legally

irrelevant[8] and legally incorrect.[9]  The second arguable reason (i.e., prevailing-party status for

purposes of attorneys' fees) appears insufficient given that attorneys' fees were already expressly

agreed to in the Offer of Judgment.  *See Bell v. Turner Recreation Com'n*, 09-CV-2097, 2010

WL 126189, at *2 (D. Kan. Jan. 8, 2010) ("[A]ny persuasive force the disclaimer [of liability]

language might otherwise have is mitigated by the 'plus reasonable attorneys' fees' language

included by defendant in its offer [of judgment].").[10]  The third arguable reason (i.e., emotional

---

[8]      Specifically, the precedential effect of a consent judgment to other potential
litigants is not relevant to the issue of the favorability of the judgment finally obtained.  *See
Reiter v. Metro. Transp. Auth. of New York*, 224 F.R.D. 157, 169 (S.D.N.Y. 2004) ("Under Rule
68, only 'the judgment finally obtained' is to be considered in the comparison with the offer of
judgment. Thus, any incidental benefits to the judgment–such as . . . a ruling with precedential
value to other potential litigants–are irrelevant.") (citing cases), *rev'd in part on other grounds*,
457 F.3d 224 (2d Cir. 2006).

[9]      *See King v. Rivas*, 04-CV-0356, 2008 WL 822236, at *3 (D. N.H. March 26,
2008) (rejecting plaintiff's argument that "the verdict he obtained is more favorable than the
joint offer because . . . the verdict carries a valuable attribute–precedential value–which might
prove useful in related plaintiffs' cases, whereas the settlement offer explicitly disclaimed
liability," reasoning that "whatever preclusive effect King's judgment might have in other cases
would not seem to add any measurable value to his recovery"), *vacated on other grounds*, 555
F.3d 14 (1st Cir. 2009).  This is because consent judgments normally do not support the
invocation of the doctrine of collateral estoppel.  *See Lawlor v. Nat'l Screen Serv. Corp.,* 349
U.S. 322, 327 (1955) (holding that judgment dismissing prior suit "with prejudice" that was
unaccompanied by findings did not constitute issue preclusion); *see, e.g., Mishkin v. Peat,
Marwick, Mitchell & Co.,* 86-CV-4301, 1988 WL 391648, at *2 (S.D.N.Y. Nov. 7, 1988)
("Issues decided by consent judgments do not normally have collateral estoppel effect because
they do not meet the requirement that the issue be actually litigated.").

[10]      Indeed, even without the agreement to pay attorneys' fees in the Offer of
Judgment, Plaintiff could have obtained attorneys' fees based on the Offer or Judgment.  *Cf.
Foster v. Kings Park Cent. Sch. Dist.*, 174 F.R.D. 19, 26 (E.D.N.Y.1997) ("[T]he Court notes
that the mere fact that the offer of judgment contained a disclaimer of liability will not
necessarily insulate the [defendant] against a motion for attorney's fees."); *Stefan v. Laurenitis*,
889 F.2d 363, 369-70 (1st Cir.1989) ("[S]ince the issue of attorneys' fees was deliberately left
open in the Rule 68 offer, the town cannot state that its language denying liability is also
evidence of the parties' intent not to include attorneys' fees in the settlement.").  Contrary to
Plaintiff's argument, the case of *Aynes v. Space Guard Prods., Inc.*, 201 F.R.D. 445, 451-52
(S.D. Ind. 2001), does not stand for the point of law that a consent judgment that omits a
disclaimer of liability is, as a matter of law, "more favorable" to Plaintiff than an offer of
judgment that contains such a disclaimer, for purposes of Fed. R. Civ. P. 68(d).  (Dkt. No. 53,

satisfaction) appears insufficient in that the test of favorability is an objective one. *See Reiter*, 224 F.R.D. at 167-69 (identifying measurement of favorability under Fed. R. Civ. P. 68 as an "objective" one, turning on a "quantifiable, objective benefit"), *rev'd in part on other grounds*, 457 F.3d 224 (2d Cir. 2006). The personal gratification of having one's rights vindicated is not relevant. *See Reiter*, 224 F.R.D. at 167-69 ("Of course, Reiter must necessarily feel some vindication from the fact that he obtained a court order requiring his reinstatement to the DVP Engineering job. . . . But the value to him of this vindication is certainly not relevant for purposes of a Rule 68 analysis."), *rev'd in part on other grounds*, 457 F.3d 224 (2d Cir. 2006).

With regard to the second difference (i.e., the agreement to pay attorneys' fees), the absence of such an agreement from the Consent Order appears to have actually made it *more* difficult for Plaintiff to obtain attorneys' fees (requiring him to make a motion regarding his entitlement to such fees, and not merely regarding the amount of those fees). In this regard, the Consent Order appears to have been less favorable than the Offer of Judgment.

At most, the Offer of Judgment and Consent Order appear to have been equal in favorability to Plaintiff. A final judgment that is *equal* to a Fed. R. Civ. P. 68 offer is *not more favorable* than that offer, requiring the offeree to pay the costs incurred after the offer was made. *See* Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must may the costs incurred after the offer was made.").

However, the Court need not decide this issue, because the Court must find that, under the circumstances, Fed. R. Civ. P. 68 does not apply. Rather, Fed. R. Civ. P. 68 applies only in

Attach. 12, at 19.) Rather, at most, that case supports the point of law that, for the purpose of determining whether a plaintiff's victory was merely technical or *de minimis* (thus warranting a denial of attorney's fees), "a plaintiff's acceptance of an offer [of judgment] containing a disclaimer [of liability] strengthens the notion that the defendant was offering a settlement to avoid prolonged litigation, rather than settling because of the merits of the case." *Aynes*, 201 F.R.D at 451-52.

cases resulting in a judgment obtained after either a trial or a hearing to determine the extent of liability.

Granted, the issue of whether Fed. R. Civ. P. 68 applies in cases resulting in a judgment obtained after settlement is unsettled in this Circuit. *Compare Boorstein v. City of N.Y.*, 107 F.R.D. 31, 33 (S.D.N.Y. 1985) ("If the judgment *or settlement* ultimately obtained by plaintiff is less than the Rule 68 offer, plaintiff cannot recover attorneys' fees or costs from the date the offer was made to the end of the suit.") (emphasis added) *with E.E.O.C. v. Hamilton Std. Div., United Tech. Corp.*, 637 F. Supp. 1155, 1158 (D. Conn. 1986) ("The court has found no authority for the proposition that the offer of judgment provisions of Rule 68, Fed.R.Civ.P., apply to cases that end in settlement and a stipulated dismissal as well as to cases that end with the entry of judgment after trial.") *and Williams v. Greifinger*, 95-CV-0385, 1999 WL 239684, at *2 (S.D.N.Y. Apr. 23, 1999) (holding that Fed. R. Civ. P. 68 did not apply in a case involving a subsequent judgment obtained by settlement).[11]

However, both the Judicial Conference of the United States and the United States Supreme Court have indicated that the rule is designed to apply in cases resulting in a judgments obtained after trial (or the more-unusual hearing to determine the extent of liability). More specifically, the Advisory Committee on Civil Rules of the Judicial Conference of the United States, in commenting in August 1984 on proposed revisions of Fed. R. Civ. P. 68, observed that "[t]he purpose of Rule 68 as adopted in 1938 was to encourage settlements and avoid protracted litigation by taxing a claimant with costs if he should recover no more *after trial* than would

---

[11]     The Second Circuit has not yet ruled on the issue. *See New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 n.8 (2d Cir. 1996) (assuming without deciding that Fed. R. Civ. P. 68 does apply to cases that end in settlement and a stipulated dismissal).

have been received [if he had accepted the offer of judgment]." 102 F.R.D. 407, 433 (emphasis added). Moreover, the United States Supreme Court has explained that "[t]he Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success *upon trial on the merits*." *Marek v. Chesny*, 473 U.S. 1, 5 (1985) (emphasis added).[12] As a result, while extending the term "judgment . . . finally obtain[ed]" to include a judgment obtained merely after settlement (such as a consent judgment) might achieve a particular judge's policy goal of "encouraging settlement" whatever the circumstance, it would appear to sacrifice the specific intent of the United States Supreme Court, Judicial Conference of the United States, and the United States Congress.

Moreover, it appears overly simplistic, in this circumstance, to so heavily rely on Fed. R. Civ. P. 68's general purpose of "encouraging settlement." A more-detailed purpose of the rule is apparent from an examination of its terms in their totality. According to the rule, the deadlines for the service of an offer of judgment are 14 days before the date set for "trial" or 14 days before the date set for "a hearing to determine the extent of liability." Fed. R. Civ. P. 68(a),(c). As a result, it appears that the specific purpose of the rule is not simply to "encourage settlement" but to do so by punishing a plaintiff for rejecting an offer of settlement that was reasonable in that it was equivalent to, or better than, what he received at trial (or a hearing to determine the extent of liability).

---

[12] At least three district courts have relied on these two sources in concluding that Fed. R. Civ. P. 68 was not intended to apply to settlements. *See Vitullo v. Velocity Powerboats, Inc.*, 97-CV-8745, 2001 WL 1117307, at *2 (N.D. Ill. Sept. 21, 2001); *Good Timez v. Phoenix Fire and Marine Ins. Co.*, 754 F. Supp. 459, 462-63 (D. Virgin Islands 1991); *Hutchison v. Wells*, 719 F. Supp. 1435, 1443 (S.D. Ind. 1989).

This interpretation of the rule's specific purpose is consistent with an in-depth analysis of the history of the rule by a law professor based on his examination of "archival materials . . . includ[ing] transcripts of the original Advisory Committee meetings, early drafts of the original Rules, suggestions received from the public, and original correspondence."  Robert G. Bone, *"To Encourage Settlement": Rule 68, Offers of Judgment, and the History of the Federal Rules of Civil Procedure*, 102 Nw. U. L. Rev. 1561, 1564 & n.9 (2008).  Based on that examination, the Professor Bone concluded that "[t]he original [Federal Rules of Civil Procedure] drafters did not adopt Rule 68 for the purpose of promoting settlement in the way we understand settlement promotion today. . . . [T]hey . . . simply adopted the offer of judgment rule that existed in state codes. Those state rules were not designed to promote settlement as such. . . . [T]hey were designed to prevent plaintiffs from imposing costs unfairly when the defendant offered what the plaintiff was entitled to receive from *trial* . . . .  The text of Rule 68 makes much more sense when it is viewed in these fairness terms."  Bone, *"To Encourage Settlement,"* 102 Nw. U. L. Rev. at 1562 (emphasis added).[13]

---

[13]    It is tempting to conclude that the trial or hearing was used as the deadline (for the plaintiff's response to the offer of judgment) in order to avoid the costs typically incurred by both the parties and the court preparing for, and participating in, a trial or such a hearing (e.g., the long hours spent preparing motions in limine, proposed jury instructions, exhibit binders, opening and closing arguments, direct and cross-examinations, as well as incurring expert witness fees, transportation costs, and hotel rooms), or during a case that has endured so long as to reach a trial or such a hearing.  *See Bathgate v. Haskins*, 63 N.Y. 261, 264 (1875) ("The object of the [offer to confess judgment] is to circumscribe and arrest litigation by preventing trials, and thus diminish the expenses arising from the same and avoid the trouble and annoyance as well as the costs of a legal controversy.").  However, Professor Bone explains, the trial or hearing is used because the test of a *reasonable* offer of judgment turns on what a plaintiff would rationally expect to gain from trial.  Bone, *"To Encourage Settlement,"* 102 Nw. U. L. Rev. at 1573, 1600, 1603.  It must be remembered that the predominant purpose of Fed. R. Civ. P. 68 is to protect the defendant from the unreasonable imposition of costs (by giving the defendant some control over the costs imposed by the plaintiff's litigating decisions).  *Id*. at 1584, 1586, 1593-94, 1596.

Finally, even if the rule's specific purpose were to simply "encourage settlements," such a purpose would *not* be achieved by construing the term "judgment . . . finally obtain[ed]" in subsection (d) as including consent judgments. This is because such a construction would encourage settlements achieved through one means (i.e., offers of judgment) by *discouraging* equivalent settlements achieved through other means (i.e., consent judgments or stipulations of dismissal). *Cf. Hutchison v. Wells*, 719 F. Supp. 1435, 1443 (S.D. Ind.1989) ("If Rule 68 applied to the present case, it would provide a disincentive for attorneys to accept settlements once an initial settlement was rejected."). Such an absurd and perverse result often occurs when a particular judge substitutes his or her own will for the plain intent of a rule.

If the United States Supreme Court, Judicial Conference of the United States, and the United States Congress wanted the term to extend to judgments obtained after settlement, they could have amended, and could still amend, the term accordingly. Here, despite the adoption of three amendments to the rule since the District of Connecticut identified the issue in question in 1986 in the case of *E.E.O.C. v. Hamilton Std. Div., United Tech. Corp.*, 637 F. Supp. 1155, no amendment to the term in question has been adopted.

### 4. Whether the Remaining Hours Were Redundant, Unnecessary, or Improper

After carefully considering the matter, the Court answers this question partly in the affirmative for the reasons offered by Defendants, and partly in the negative for the reasons offered by Plaintiff. (Dkt. No. 53, Attach. 12, at 17-22 [Plf.'s Memo. of Law]; Dkt. No. 55, Attach. 2, at 7-17 [attaching pages "5" through "15" of Defs.' Opp'n Memo. of Law]; Dkt. No. 56, at 4-10 [Plf.'s Reply].)

Plaintiff's attorneys seek compensation for spending 25.3 hours drafting and revising the Complaint, and 47 hours litigating the motion for a preliminary injunction. (Dkt. No. 56, at 5, 8 [Plf.'s Reply Memo. of Law].)  The Court has carefully compared the Complaint and the motion papers filed in this action to the complaints and motion papers filed in *McGlone v. Bell*, *Bloedurn v. Keel*, and *Sonnier v. Crane*. *See, supra,* Part III.C. of this Decision and Order.  After doing so, the Court concludes that the Complaint and motion papers in this case generally address similar legal and factual issues, and contain similar points of law and analysis, as addressed by Plaintiff's attorneys in the prior lawsuits. *See Access 4 All, Inc. v. Grandview Hotel Limited Partnership*, 04-CV-4368, 2006 WL 566101, at *4 (E.D.N.Y. Mar. 3, 2006) ("These cases involve identical legal issues and similar factual issues. The duplicitous nature of the litigation warrants a reduction in the law firm's fee award.").  As a result, the Court finds a reasonable attorney would spend no more than 16.9 hours on the Complaint (i.e., two-thirds of the hours requested), and no more than 31.3 hours on the motion (i.e., two-thirds of the hours requested).

Moreover, Plaintiff's attorneys seek compensation for 7.3 hours spent by Paralegal Kane helping Plaintiff establish a cause of action through pre-litigation activities. (Dkt. No. 56, at 8 [Plf.'s Reply].)  It is true that, by the time Paralegal Kane started performing the work, Plaintiff had already attempted once to speak at the campus; however, it is also true that, during the performance of that work, Plaintiff attempted again to speak at the campus.  Under the circumstances, the Court finds a reasonable paralegal would spend no more than 4.9 hours on the work in question (i.e., two-thirds of the hours requested).

Furthermore, Plaintiff's attorneys seek compensation for 32.1 hours spent by Mr. Scruggs preparing the legal fee application. (*Id.* at 9.) The Court would note that this was not a fee application dealing with particularly novel or complex issues. Furthermore, Plaintiff's attorneys were, when they filed this fee application, familiar with preparing such applications in First Amendment cases. As a result, the Court finds a reasonable attorney would spend no more than 21.4 hours on the legal fee application (i.e., two-thirds of the hours requested). *See Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, 06-CV-5487, 2008 WL 4453221, at *12 (finding 19.4 hours spent on drafting a fee application to be excessive "in light of the numerous fee applications drafted by Plaintiffs' counsel" and reducing it by half to 9.7 hours).

Finally, for the same reasons as stated above, the Court finds that, with regard to any other work performed, a one-third reduction is warranted.

In summation, based upon the Court's adjusted hourly rates and adjusted number of hours, the reasonable attorneys' fees in connection with Plaintiff's case are $32,514.50, calculated as follows:

| Attorney/ Paralegal | Hourly Rate Requested | Hourly Rate Awarded | No. of Hours Requested | No. of Hours Awarded | Amount Awarded |
|---|---|---|---|---|---|
| Nathan Kellum | $275 | $250 | 41.3 | 27.5 | $6,875 |
| Philip Vecchio | $225 | $225 | 19.6 | 13.1 | $2,947.50 |
| Jonathan Scruggs | $225 | $200 | 159.5 | 106.3 | $21,260 |
| Michael Kane | $80 | $80 | 26.8 | 17.9 | $1,432 |

**E.      Whether the Costs and Expenses Requested Are Reasonable**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memoranda of law. (Dkt. No. 53, Attach. 12, at 22-23 [Plf.'s Memo. of Law]; Dkt. No. 56, at 7-8 [Plf.'s Reply].) The Court would add only that such costs

and expenses appear to be often awarded by district courts in this Circuit. *See, e.g., Disabled Patriots of Am. v. Niagara Group Hotels*, 688 F. Supp.2d 216, 228 (W.D.N.Y. 2010) (awarding pro hac vice admission fee to Florida attorney even though he had co-counsel already admitted in the Western District of New York); *Natural Organics, Inc. v. Nutraceutical Corp.*, 01-CV-0384, 2009 WL 2424188, at *2 (S.D.N.Y. Aug. 6, 2009) (awarding both travel fees and pro hac vice admission fee to Utah attorney even though she had co-counsel already admitted in the Southern District of New York); *Disorbo v. City of Schenectady*, 99-CV-1131, 2004 WL 115009, at *5 (N.D.N.Y. Jan. 9, 2004) (Kahn, J.) (awarding airfare and hotel expenses in full).

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for attorneys' fees and costs is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, such that the award is reduced to $34,772.75, which is comprised of $32,514.50, in attorneys' fees and $2,258.25 in costs.

Dated: January 27, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge